[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff, Nicholas Sgro, brings this complaint in two CT Page 6017 counts. The First Count is a claim for unpaid overtime wages. The Second Count is for double damages pursuant to § 31-72, Connecticut General Statutes.
The defendant, Ingenito, Inc., denies that any overtime wages are due to the plaintiff, and further, claims by way of Special Defenses a set-off of moneys due from the plaintiff.
The pertinent facts are:
The defendant corporation, a family business, was engaged in landscaping services and also, raised and sold plants, shrubs, etc. in conjunction with a greenhouse it operated. The landscaping portion of the corporate business was managed and controlled by Randy Ingenito. The greenhouse business was managed and controlled by Randy's two sisters, Joyce Ingenito and Karen Ingenito. In addition, the two sisters handled the day to day corporate matters. Joyce was the bookkeeper handling the payroll, paying bills and in general charge of the corporate financial affairs. Both sisters were involved in purchases and sales by the corporation and were aware of the hiring and termination of employees. Randy managed the landscaping business. He would obtain the contracts for landscaping, determine the need for, and would hire and fire employees used in landscaping, as well as being in control of the individual landscaping projects.
Although, Ingenito, Inc. was a family corporation, the stock ownership was divided between the families of the father of Randy and his sisters, and their father's brother. The two brothers ran the corporation and made the corporate decisions. However, just prior to the time period involved herein the father of Randy and his sisters, died and his estate was in probate. The three siblings together with their uncle continued operating the business generally as they did before their father's death.
The plaintiff was orally hired by Randy to work in the defendant's landscaping division. The plaintiff executed a Tax Withholding form (W4) authorization on March 22, 1994 and started working for the defendant on April 14, 1994. However, Plaintiff's Exhibit 1 was subsequently executed on April 18, 1994.
Exhibit 1 was drafted by the plaintiff. Randy Ingenito signed it without setting out that he was doing so as an officer or authorized corporate official of the defendants. CT Page 6018
Exhibit 1 was never presented to the corporation for approval, nor presented for filing as a corporate record. The sisters, Karen and Joyce, who handled the corporate financial documents and records, were not aware of Exhibit 1 until after the plaintiff left the defendant's employment.
However, Randy did inform the sisters that he had hired the plaintiff to work for the landscape division, that the plaintiff was to be paid $1,440.00 biweekly, together with benefits including health insurance and the use of a motor vehicle. Based upon this oral communication corporate checks for $1,440.00 were issued to the plaintiff every two weeks. The plaintiff would present time sheets of his weekly hours of work, which however, did not account for meal breaks.
When Randy hired the plaintiff, he instructed the other landscape employees that the plaintiff would be in charge when he, Randy, was not present. Thereafter, Randy, spent very little time with the work crew. The plaintiff would instruct the employees in the work each was to do, where and how a particular job was to be carried out and when overtime hours would be worked. These supervisory tasks carried out by the plaintiff took the greater portion of his work day.
The plaintiff's pay scale was approximately double that of any other employee. Although he did not directly hire or fire an employee he was consulted by Randy in these matters as well as to his evaluation of the employee's work. The plaintiff was in fact Randy's alter ego on the job site. The plaintiff was the person directly in contact with the employees, and to whom they looked to for direction and who responded to any questions they had regarding the employment tasks.
The court finds for the defendant as to both counts of the complaint.
The plaintiff was hired by Randy Ingenito on an oral contract on March 22, 1994.
He started the employment April 14, 1994. The terms of this oral agreement set out his weekly pay and benefits as well as employment in a supervisory capacity. This information was conveyed by Randy to his two sisters for payroll purposes. Thereafter the plaintiff received his full pay without regard to the number of hours he set out in his weekly time sheet. He never questioned the fact that no time and CT Page 6019 one-half was ever included. (Although he testified that he did speak to one of the sister's about it once, he, however, could not recall to which one, nor when nor where this took place. Both sisters deny any such conversation.).
As to Plaintiff's Exhibit 1 (the writing plaintiff claims is the employment agreement with the defendant), neither Randy nor the plaintiff ever presented it for filing with the defendant's record. That the first notice to the defendant of Plaintiff's Exhibit 1 was after the plaintiff left the defendant's employ and demanded payment for overtime work. He pointed out that Exhibit 1 set out that overtime work was to be paid on an overtime rate.
The short answer to this claim based upon Exhibit 1 is that although Randy signed Exhibit 1, he did not do so as an officer of the defendant with authority to execute the document even though directly under his signature on the document was typed in a request for both signature and title. Thus, the direct implication being that he, Randy, executed the document but without intending to do so in behalf of the defendant.
Further, Randy during his testimony indicated that the time and one-half, if any, was to be based upon the financial results of each job to justify any such payment.
Thus the court finds that there was an oral contract of employment between the parties herein and that the oral contract provided for plaintiff to act in a supervisory capacity, and that the plaintiff did enter into the defendant's employ and did carry out his supervisory duties and thus was an exempt employee to the extent set out in Conn. Gen. Stat. §§ 31-60-14 and 31-60-15.
That there is no overtime payment due him from the defendant.
The defendant by way of its Second Special Defense seeks to set off those sums due to the defendant from the plaintiff.
The plaintiff admits that certain items were provided to him by the defendant and there is due to the defendant a sum for these items. He denies that there are any sums due to the defendant for storage of a certain Jaguar automobile, or for the use of a pickup truck.
The court finds that there may be due from the plaintiff to the defendant some sums of money as alleged in the defendant's CT Page 6020 special defense seeking a setoff of those sums. However, because of the court's findings of the issues raised in the complaint, for the defendant, the setoff has no sum due to the plaintiff from the defendant to be applied against.
Therefore, the court does not determine the merits of the defendant's request for a setoff.
Therefore, judgment is to enter for the defendant on both counts of the plaintiff's complaint together with applicable costs to the defendant.
JULIUS J. KREMSKI JUDGE TRIAL REFEREE